## No. 14,134.

## Succession of Joseph Oteri.

### Syllabus.

Opposition to a provisional account filed by administrators of a succession, showing a certain amount of funds in their hands for distribution, must be confined to issues legally arising from the account. Issues cannot be raised with parties and as to matters not brought into court through the presentation of the account.

2. A person is not made a party to a proceeding by calling him into court simply as a witness.

APPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

Joseph Oteri died on the 14th of December, 1897; on the 19th of April, 1898, an inventory of the property of his succession was made by Fred Zengel, notary public.

It showed cash to the creditors of the deceased in the hands of Woodward, Wight & Co., three thousand two hundred and ninety-six and ninety-six hundredths dollars ($3296.96). Real estate, $4500. *Community interest* in said real estate, $2250. Total amount of effects inventoried, $5546.

On the 13th of May, 1898, letters issued to Joseph St. Amant and

his wife, Lucy Oteri, as joint administrators of the succession.

On the 31st of October, 1899, an annual account of their administration was filed.

They charged themselves with the amount which figured in the inventory as being in the hands of Woodward, Wight & Co., $3296.96, and crediting themselves with various disbursements amounting to $397.40, struck a balance of $2899.56.

Evariste Blanc and F. P. André opposed the account and claimed as privileged creditors, as appraisers, to be placed therein each for $10. The opposition was maintained and the account amended to that extent and as so amended it was approved and homologated.

On the 19th of June, 1900, a second inventory was made under order of court at the instance of the administrators, on the allegation that the former inventory had inventoried only one-half of the property as belonging to the succession, whereas it should have been inventoried as a whole. In this inventory the real estate was inventoried at a valuation of four thousand dollars, no mention being made of movables or money. Blanc and André were appraisers.

On June 25th, 1900, the plaintiff in a suit in the United States Circuit Court entitled V. Scalzo et al. vs. Joseph Oteri, suggesting that in that suit a final decree of that court had been rendered and signed June 14, 1900, by that court in favor of the plaintiff therein against the succession of Oteri, and that by an account filed and homologated in said succession it appeared there remained in the succession the sum of $2899.56, the same should be paid over to them in part payment of their judgment, and further suggesting that there was on hand in the succession certain real estate which they described, and further suggesting that there was other property belonging to the succession not yet inventoried or accounted for, the court, at their instance, ruled the administrators to show cause why an order of court should not issue directing them to pay over to plaintiffs in rule the said sum of $289.56 in part payment of their judgment and why the real estate should not be sold for said purpose, and why, further, an inventory of the property not yet described should not be made and filed.

On the same day on the suggestion of H. & C. Newman, that they were holders and owners of a promissory note for $6000 and interest, made and subscribed by Joseph Oteri and secured as to payment, prin-

cipal, interest and attorney's fees, by mortgage on the real estate inventoried, and that said note ws due and unpaid, the court ordered the administrators of the succession to show cause why the property should not be sold for cash to pay the debts of the succession, and especially to pay the mortgage note. This last rule was made absolute, and the court ordered that for the purpose of paying the debts of the succession among them that of the plaintiffs in rule, the real estate be sold at public auction, for cash.

The court made the first rule absolute in so far as to order the administrators to file an account of their administration of the succession. The property was sold on the 16th day of August, 1900, to H. & C. Newman for twenty-eight hundred dollars.

On the 1st of August, 1900, the administrators filed an account and tableau of distribution of the funds in their hands, which they set down as being twenty-eight hundred and ninety-nine dollars and fifty-six cents. The account filed was as follows:

Cash on hand as per last account.........................$2899 56

We propose to pay first the following law charges:

1. Costs paid the clerk of court......................... 1 80
2. Costs of crier....................................... 1 00
3. Fees paid Blanc and André, first appraisement.......... 20 00
4. Fees due civil sheriff................................ 50
5. Costs due Blanc and André, second appraisement....... 20 00
6. Costs due F. Zengel, notary, second inventory.......... 25 00
7. Costs paid advertising, first account, Bee............. 2 10
8. Costs paid advertising, first account, Times-Democrat.... 2 10
9. Commissions of administrators on amount of inventory... 165 92
10. Rouse & Grant, attorney for succession................ 250 00
11. Rouse & Grant, attorneys for succession, defending suit of
    V. Scalzo vs. Succession in U. S. Circuit Court...... 500 00
12. Amount retained for future costs...................... 25 00
13. Insurance premium on house, Dec. 23, 1899............ 23 40
14. Taxes of house for 1899, Jan. 25, 1900................ 28 00

                                                        $1064 82

Succession of Oteri.

*Ordinary Creditors—*

1. United States judgment, U. S. Circuit Court..........$1125 40
   and five per cent from May 23, 1896.
2. Guy M. Hornor, attorney's fees.......................  300 00
3. Charles H. Schenck, on account......................  577 85
4. Salvali Scalzo and Sylvester Rocco Florita, judgment of
   U. S. Circuit Court, No. 11,059, with five per cent. inter-
   est from June 11, 1885, less $1266.88 paid May 12, 1894. 3876 00
5. Randazzo and Di Christini, judgment U. S. Circuit Court,
   No. 11,059, with five per cent. interest from June 11,
   1885, less $1203.54 paid May 12, 1894................ 3497 82
   Costs due complainants in said suit No. 11,059, clerk....   82 15
6. James D. Seguin, master's fee in Scalzo vs. Succession of
   Joseph Oteri, No. 11,059, U. S. Circuit Court........  900 00
7. Rouse & Grant, attorneys for administrators defending suit
   of Scalzo vs. Succession of Oteri, No. 11,059, U. S. Cir-
   cuit Court ......................................  500 00

(Signed)  Jos. St. Amant,
Lucy St. Amant,
*Joint Administrators of Succession of Joseph Oteri.*

Salvador Scalzo and Sylvester Rocco Florita (as representatives of the succession of Vincenzo Scalzo, and Ignacio Randazzo and Antonio Di Christini, the plaintiff in the suit of V. Scalzo *et al.* vs. Joseph Oteri) filed an opposition to the account as did James D. Seguin, Guy M. Hornor, the United States and the Fidelity and Deposit Company of Maryland.

The opponents first named (Scalzo *et al.*) alleged that they were creditors of the succession for over ten thousand dollars, fixed by decree of the Circuit Court of the United States, which claim arose long prior to the death of Joseph Oteri, and that they were entitled to a right, privilege and preference in the assets of the deceased then in the hands of the administrators, or those which were disposed of by him with the intent to avoid pursuit of their claim, for which they will hereafter assert their rights in this their opposition to the account presented on the 1st day of August, 1900.

They opposed the account filed as to the amount sought to be paid therefrom, first and second claim of Blanc and André for $20 as ap-

praisers, for the first appraisement, and $20 for the second appraisement —they were entitled to only $8 for each.

3rd. The claim of Zengel, notary, for $25, making second inventory, as excessive.

4th. Claim of Rouse & Grant for $500 for defending the suit of Scalzo vs. Oteri in the United States Circuit Court—said charge is not a privileged claim, and if the same is not excessive it should be ranked as an ordinary claim, to be paid in common with the ordinary creditors of the succession.

5th. The judgment in favor of the United States for the sum of $1125, as not being entitled to a preference over opponents' judgment.

6th. Fee of Guy M. Hornor for $300, as not being a privileged claim, is subordinated to that of opponent.

7th. Claim of Charles M. Schenck for $580 should be subordinated to that of opponent.

8th. Claim of J. D. Seguin, master in chancery, for $900 should be placed among and paid as privileged claim.

9th. Claim of Rouse & Grant, attorneys, for defending suit of Scalzo vs. Oteri in the United States Circuit Court, should be subordinated to the privileged charges and to the judgment of opponents.

Having made opposition, as above, these opponents proceeded to set forth and aver that they were advised and believed and so charged that the assets of this estate had been diverted through the instrumentality of the administrators herein; that said administrators had taken possession of a large part of said assets and had detained the same for their own interest and for their own advantage, and for the advantage and benefit of the widow of the said deceased, Joseph Oteri, and that they had not had the assets so diverted and detained inventoried in the succession of the said Joseph Oteri, and that so much of said assets as have been converted into cash or otherwise disposed of should be accounted for by said administrators, and that so much of said assets as remained in kind undisposed of, but in the possession of said administrators should be inventoried in the succession of said Joseph Oteri, and the said administrators made to account for the same.

(1) The appearers and opponents averred that they were informed, advised and believed, that at the time of the death of said Joseph Oteri he possessed a large amount of premium bonds of the City of New Orleans, and other valuable negotiable securities, which came into the

possession of his wife after his death, and that she diverted the same to the detriment and prejudice of these appearers.

That they were informed and believed, and so charged, that in addition to the securities above generally described, the said widow of Joseph Oteri came into possession of funds and credits of said Joseph Oteri, as well as valuable jewelry which were in the possession of said deceased at the time of his death, and which she had concealed from said estate and diverted therefrom to his own use and to the detriment and prejudice of appearers and opponents, and the other creditors of said deceased.

That the steamship "Joseph Oteri, Jr." is and was the property of Joseph Oteri, Jr., long prior to his death; and that during his lifetime and at the time of his death he managed and operated the same as owner thereof either personally or through charter.

(2) That on or about the 13th day of October, 1890, during the existence of the indebtedness due the appearers and opponents, and with a view to defraud them, he caused a transfer of the said vessel to be made in the name of Mrs. Luella Oteri, his wife, as the owner thereof.

That, thereafter, on the 30th day of April, 1898, the said Widow Oteri caused the transfer of the said title to be made from her to one William A. Powell, a British subject, to avoid the operation of the laws of the United States as against said vessel.

(3) That, subsequently, on or about the ninth day of September, 1898, the said William A. Powell made a re-transfer of the said vessel to the said Mrs. Luella Oteri, as sole owner, she paying nothing, therefor, and nothing having been paid by the said William A. Powell, for said transfer previously made to him, and nothing paid for the original transfer in the name of Mrs. Luella Oteri, as the wife of Joseph Oteri, as heretofore recited, and all of which acts and doing in the original transfer from Joseph Oteri to his said wife and from his said wife to William A. Powell back to the said Widow Oteri were done to injure and defraud the creditors of said Joseph Oteri, deceased, and particularly the appearers and opponents.

(4) And opponents further opposing said that they denied, as simulated and fraudulent, null and void in law, the pretended mortgage given by the said Mrs. Luella Oteri under date of February 7, 1900, in favor of Mrs. Widow Dominic Cefalu, for five thousand

($5,000.00) dollars, recorded in the customs department of the United States Customs Department, Book 1, folio 93, on said date, they averred that said mortgage was effected, solely and purposely to place said lien upon said vessel to the detriment of the rights of opponents and to deprive them of their right to subject said vessel, the property of said decedent, Joseph Oteri, to the payment of opponents' debt and judgment.

That in the inventory herein, there appeared to be a piece of real estate, then under advertisement and sale, consisting of five (5) certain lots of ground situated in the square bounded by Chippewa, Market, St. James, Felicity and Annunciation streets, fully described in the nventory taken in this succession by Fred Zengel, notary public, under date of April 18th, 1898; and in the supplemental inventory taken by said notary on the 13th day of June, 1900.

That said property was acquired by Joseph Oteri, deceased, on the 14th day of February, 1884; that prior to that date the said Joseph Oteri, Jr., was, and had been, divorced from Luella A. Oteri herein set forth as being the widow in community, as would more fully and at large appear in the suit of Oteri vs. Oteri, No. ——— of the docket of the Civil District Court, Division "D," judgment therein rendered granting final divorce on the 26th day of March, 1877.

(6) Opponents further declared and said that said property is in full ownership was the property of the estate of the said Joseph Oteri; that if said Joseph Oteri remarried said Luella Oteri at any time it was subsequent to the acquisition of said property by said Joseph Oteri, and constituted part of the said estate; and that even if so, said property was acquired during the remarriage between Joseph Oteri and Luella Oteri, she had no right therein until after the payments of the debts due by the deceased and of the community of which she was a member, and the said property was amenable under the judgment of the United States Circuit Court, aforesaid, and opponents had a first lien and mortgage privilege thereon.

(7) Opponents averred and said that said property was presently advertised under an order of this court to be sold at the instance of H. & C. Newman Company, Limited, of New Orleans, who represent themselves to be creditors of said estate in the sum of six thousand ($6,000.00) dollars, under a mortgage dated the 21st day of August, 1896, passed before W. D. Fahey, notary public; that said sale

had not yet been effected and the proceeds thereof cannot now be accounted for, but in the interest of justice it was right and proper to marshal the assets as far as may be and to determine the indebtedness of the estate upon the filing of the account and disbursements as applied for by the account herein opposed; that as to said indebtedness so claimed by the said H. & C. Newman Company, Lim., opponents said that they were not the *bona fide* owners and holders of said note; that they were interposed at the instance of said administrators and were used to enforce the payment of the same; that said note was among the papers and property of said Joseph Oteri at the time of his death; and that the action of said H. & C. Newman Company, Limited, in lending themselves to a proceeding herein and asserting that they were creditors of said Joseph Oteri of the mortgage note nominally in their possession was fraudulent and collusive; that they were acting in concert and combination with said St. Amant and his wife, the widow of the late Joseph Oteri.

They prayed that the account herein be amended in regard to the items hereinabove opposed; that the opponents be placed thereon in accordance with the judgment of the Circuit Court of the United States in said No. 11,059, for principal, interest and costs, and master's fees, as therein detailed; that the claim of H. & C. Newman Company, Limited, be rejected and that the said mortgage operating upon the property of said deceased be cancelled; that the said administrators be ordered and directed to inventory the property of said Joseph Oteri, Jr., diverted from said estate; that they be further ordered and directed to inventory and hold subject to the court's order the steamship Joseph Oteri, Jr., and that in due course of proceedings a judgment be rendered herein directing the sale of all the property of said estate and filing of tableau and distribution with recognition of appearers judgment with interest and costs upon said tableau to be paid by preference and priority.

Appearers and opponents further prayed for all necessary orders in the premises and for general relief.

Opposition to the fee of Seguin, as master in chancery, for $900.00 was withdrawn by all parties and payment of the same by privilege out of the funds in the hands of the administrators was consented to by all the opponents.

Guy M. Horner was placed on the administrators account as *an*

*ordinary creditor* for $300.00 for attorneys fees. He opposed the account claiming to be placed thereon as a privileged creditor.

The United States was placed on the account as an ordinary creditor by judgment for $1,125.40, with legal interest from May 23, 1893. It opposed, claiming to be a *privileged creditor* for the amount of its judgment, interest and costs, and prayed that the account be amended by placing the government's claim on it as such, in preference to all other debts in the account and tableau and to be ranked after the charges numbered 1 to 14 inclusive, and the charge in favor of Seguin as special master.

The Fidelity and Deposit Company of Maryland opposed the account, claiming to be placed thereon as a privileged creditor for premiums due to it for the past year ending May 11th, 1900, and that ending May 11th, 1901, amounting together to $70.00 as being the surety in the official bond of the administrators.

The District Court rendered judgment maintaining the opposition of the Fidelity and Deposit Company of Maryland, and decreeing it to be a privileged creditor for $70.00 to be taxed as costs, also that of *James D. Seguin* as a privileged creditor to be taxed as costs. It maintained the opposition of the United States and recognized it as a privileged creditor for the amount, ranking all other claims save those placed on the account and decreed to be privileged claims for costs and law charges. It rejected the demand of Guy Horner to be recognized as a privileged creditor. It dismissed the opposition of Salvador Scalzo and Sylvester Rocco Fiorita, representatives of the estate of Vincenzo Scalzo and of Ignacio Randazzo and Antonio Di Christini at their costs, reserving to them, however, all rights they might have against all parties charged with holding any property belonging to this estate, save H. & C. Newman, against whom their rights were reserved only against any surplus which might be in their hands after payment of their claim against Joseph St. Amant, out of the proceeds of the note of Joseph Oteri, given as collateral security for said claim. In all other respects it dismissed the several oppositions and it ordered the account of the administrators to be amended so as to conform to the decree and that, as thus amended, it be approved and homologated, and the funds distributed in accordance therewith.

Ignazio Randazzo *et al.,* opponents, appealed.

---

*Rouse & Grant,* for Administrators, Appellees.

*William S. Benedict* and *Lazarus & Luce,* for Salvador Scalzo and S. R. Florita, Opponents, Appellants.

*H. Garland Dupré* and *William B. Grant,* for H. & C. Newman, Limited, Creditors, Appellees.

*William Wirt Howe,* U. S. Attorney, for the United States of America, Creditors, Appellees.

The opinion of the court was delivered by

NICHOLLS, C. J. An examination of the record discloses that the account filed on the 1st of August, 1901, by Joseph St. Amant and wife, joint administrators of the Succession of Joseph Oteri, did not purport to be a final account of his succession, but simply recognized that they had at the time of the account the amount stated therein $2,899.56, which they proposed to distribute in the manner as shown therein.

We think the correctness of that account and the distribution of the funds therein referred to, according to rights of parties interested, were the only matters which properly could have been raised and disposed of by the District Court in opposition to that particular account. The real estate of the succession had not been disposed of when that account was filed and we are not informed what became of the price. Having been sold in the probate proceedings to pay the debts of the succession, the price arising from the sale will have to be accounted for by the administrators in some future proceedings in which all parties in interest should be brought into court in a regular and legal manner. We see by a paper copied in the transcript that H. & C. Newman became the purchasers of the property for twenty-eight hundred dollars, but the firm of H. & C. Newman, Limited, are not before the court. The corporation was not brought before it as a litigant in answer to appellants' opposition by making Charles Newman a witness. Lerchard, from whom H. & C. Newman received the $6,000.00 note as a collateral, is not before the court, nor is the widow of Joseph Oteri, nor are the parties legally concerned in the steamship Joseph Oteri. Appellants have not ruled the administrators into court, nor asked judgment against them, nor have they furnished the data on which a judgment against them could be based, even if one were desired.

In their pleadings they say they reserved their rights to be proceeded

upon hereafter, and on the trial they referred to their present proceedings as being in the nature of a "bill of discovery." They placed matters in the lower court and they have placed them before us in this court in manner such as to make it difficult for us to know wherein they feel aggrieved and what is the relief which they seek at our hands. We think that the only manner in which we can dispose of matters as they now are, in justice to all parties, is to limit our enquiry on this appeal to appellants' opposition as affecting the funds in the hands of the administrators, as shown by their account, and to leave all other matters open and undisposed of as of non-suit.

' Appellants say in regard to the claim of the United States:

"The same was proved as a matter of fact. We apprehend the law gives the government a preference when an estate is *insolvent.* We do not concede this to be the case." *As matters stand, the estate is apparently insolvent to a large amount.* There is an express admission to that effect in the record. We think the disposition made of the claim was correct. 10 Ann. 723.

The claim of the Fidelity and Deposit Company for seventy dollars for premiums due to it as on its suretyship of the administrators bond should be reduced to thirty-five dollars. It was not a charge against the succession prior to the adoption of Act No. 76 of 1900. Since that date it is to be classed as an expense of administration and is secured as to payment by privilege.

For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court herein appealed from in so far as it deals, on the opposition of the appellants herein, with the funds in the hands of the administrators, shown by this account, and the distribution of the same, be amended by reducing the claim of the Fidelity and Deposit Company from seventy to thirty-five dollars, payment of said amount recognized as secured by privilege. As so amended the judgment of the District Court on that branch of the case is affirmed.

It is further ordered, adjudged and decreed, that the judgment of the District Court in so far as it deals otherwise with the opposition of the appellants herein, is hereby annulled and said opposition is dismissed as of non-suit.

Costs of appeal to be borne by the succession.

Rehearing refused.